AURELIO EMANUELLI FONTÁNEZ ET AL., Plaintiffs and Appellees, *v.* AMEDEE EMANUELLI SURO, Defendant and Appellant.

No. 261. Decided February 15, 1963.

---

*Carlos Irizarry Yunqué* and *Rafael Hernández Colón* for appellant. *Héctor González Blanes* and *José A. Valero Zayas* for appellees.

Division composed of Mr. Justice Pérez Pimentel, as Chief Judge of Division, Mr. Justice Rigau, and Mr. Justice Dávila.

MR. JUSTICE DÁVILA delivered the opinion of the Court.

This action was brought to revendicate three squares of land. The parcel is situated in a ward of Coamo. The parties own two pieces of rural property with a dirt road on one of their sides as a common boundary. Plaintiffs' parcel has an area of 73.75 cuerdas. That of defendant an area of 200 cuerdas. The controversy arose as a result of the fact that, according to plaintiffs' allegation, on a certain occasion the road was deviated into plaintiffs' property. As a result of this deviation the parcel in dispute remained on the opposite side of the road and adjacent to defendant's property. Defendant maintains that there was no such deviation.

In resolving the conflict in the evidence, the trial judge made the following finding:

"The evidence introduced at the hearing of the case disclosed that from and after 1948 defendant and his predecessors in title have performed acts of ownership over the parcel of seventy-seven hundredths cuerda which is part of Passalacqua's prop-

erty, but which was separated from the body of the latter property when the Santa Catalina road was deviated."

The preceding finding resolves the conflict in the evidence in favor of plaintiffs and leaves the defense of acquisitive prescription set up by defendant without any basis.

At the close of the hearing of the case defendant moved for a personal inspection. It was denied. This ruling was alleged as error.

■ In *Martínez* v. *Rodríguez*, 26 P.R.R. 5 (1917), invoking the provisions of §§ 1169, 1194 and 1195 [1] of the Civil Code—31 L.P.R.A. §§ 3262, 3311, and 3312—we held that a personal inspection should be made in civil cases. After citing those provisions we said:

"The Law of Evidence of March 9, 1905, is not inconsistent with these provisions. As the ocular inspection is, therefore, a mode of evidence it should be made in the presence of the parties or their attorneys, who should be given an opportunity to explain or to add to the result of such inspection. Likewise, the court should reduce its ocular inspection to form (*acta*)."

See, also, *Lampón* v. *Línea Romero*, 60 P.R.R. 207 (1942).

The view or inspection as a means of proof was recognized in the *Partidas* of King Alphonse. In enumerating the kinds of proof, Law 8 of Title XIV of *Partida* Third provided that:

---

[1] These sections read as follows:

Section 1169:
"Proofs may be given by instruments, by confession, by the personal inspection of the court or judge, by experts, by witnesses, and by presumptions."

Section 1194:
"Evidence by personal inspection by the court or judge shall only be effective in so far as it clearly permits the court to judge, by the external appearance of the thing inspected, of the fact which he desires to ascertain."

Section 1195:
"The inspection made by a court or judge, may be weighed in the sentence rendered by another judge, provided the former has set forth with perfect clearness in the proceedings the details and circumstances of the thing inspected."

". . . There is likewise another kind of proof, as the inspection of the thing in dispute by the judge; as where the parties dispute about the limits of towns or other places."

In 201 *Código Civil* 369 (Madrid, 1904), SCAEVOLA states the following in connection with judicial inspection:

"Judicial inspection—says García Goyena—is a means of proof, one of the most desirable. Other authors are of the opinion that the judge, upon making an inspection on the premises of the thing object of the litigation and observing personally its outward appearance, deserves the consideration of a witness, but of an impartial and fair witness like none, who makes the inspection in good faith and with a great spirit of determination, who shall not be impressed either favorably or adversely towards any of the two parties, being in a position, therefore, to contribute to the litigation an element of sound and definitive judgment. Another merit of this proof is that since the circumstances to be considered in the evaluation are noted down at the very moment they are observed with all necessary details, in view of the terms in which the question has been judicially raised, there is little danger, which is frequent in all other oral or analogous proofs, that with the lapse of time the confusion of the details may lead, apart from bad faith, to regrettable errors which may be translated into unfair decisions."

The judge's direct observation of the thing in dispute is generally accepted as an efficient and impartial means of proof. It is the fact, the thing speaking for itself, with opportunity to the parties to explain any circumstance which in their opinion ought to be clarified. See: I DE LA PLAZA, *Derecho Procesal Civil Español* 518 (3d ed., Madrid, 1951); 5 LESSONA, *Teoría General de la Prueba en Derecho Civil* 7–30 (Madrid, 1942); I-3 SPOTA, *Tratado de Derecho Civil* 875 (Buenos Aires, 1958).

■ The fact that the law establishes judicial inspection as a means of proof does not make it the duty of the judge to make the inspection. In criminal matters we have repeatedly held that the granting of a view or inspection rests with the sound discretion of the trial court. *People* v. *Rivera*, 77

P.R.R. 628 (1954); *People* v. *García,* 66 P.R.R. 478 (1946).

MANRESA shares the same view. Commenting the sections of the Spanish Civil Code corresponding to our §§ 1169, 1194 and 1195, he maintains:

"A reading of the provisions under consideration clearly reveals their character and scope. To grant a power, without ever making it an imposition, and to limit the exercise thereof, do not necessarily compel the acceptance of the result of such proof, and yet its admissibility is opposed in some case either because it is not proper under § 1240 or because, even if it is proper, the judge or the trial court is unable to make the evaluation according to § 1241. They are, therefore, provisions which may be violated because of the admission of evidence, but not because of failure to attribute efficacy to the evidence presented."

LESSONA, in *op. cit. supra* at p. 17, states:

"We add further that in France, where the doctrine and the decisions are in accord, the judge is always considered as having power to refuse the inspection, even if it has been requested at the instance of the parties, which, on the other hand, follows the general principles of evidence."

 This notwithstanding, in passing upon a motion for inspection the judge should exercise sound discretion. He must bear in mind the interest of every litigant to acquaint the judge with all the details of the case. And the judge, unless it is absolutely unnecessary or causes insurmountable confusion to the administration of justice, should be ready to give the parties an opportunity to present the entire evidence legally admissible. It is the only way in which a defeated litigant may feel somewhat satisfied. The judge has heard him. And in administering justice it should be every judge's concern not only to decide in accordance with the law and the dictates of his conscience, but also to convey to the parties the conviction that they have actually had a day in court.

■ If we examine the findings of fact made by the trial judge, it may be reasonably concluded that if the personal inspection had been made it would not have altered the final disposition of the case. The trial judge, we have said, gave credit to plaintiffs' evidence. This evidence established that in the second decade of the century the road which separated the litigants' property was deviated, and that in order to change its course it was necessary to take land from the property which at present belongs to plaintiffs, the parcel in question having remained on the side of defendant's property. And in his findings he said that "witness Joaquín Aponte produced by defendant testified that on 'Santa Catalina' road there was a stretch or 'footpath' which extended along the grade or cliff which was used by pedestrians." This is the footpath which according to plaintiffs' evidence was the course of the old road before it was changed. So, if the judge had viewed the place in controversy he would have seen that footpath—defendant's own evidence establishes its existence—and that fact corroborates the opposing evidence that that was the course formerly followed by the road.

Citing again from LESSONA'S textbook, at p. 29, he says:

"The denial of a request for judicial inspection may also depend on the fact that other evidence already heard may make it impossible to controvert further the fact alleged, which we know is the general rule."

It is evident that the trial judge did not abuse his discretion in refusing to permit the personal inspection sought.

■ Appellant raises the question that the trial court lacked "jurisdiction" and that, therefore, the judgment rendered is void. The constitutional provision to the effect that "the courts of Puerto Rico shall constitute a unified judicial system for purposes of jurisdiction, operation and administration," Art. V, § 2, Constitution of the Commonwealth, and the provisions of § 10 of the Judiciary Act, dispose of this contention. The case was filed in the Superior Court, the

court took cognizance thereof, and the parties did not object. *Ramírez* v. *Ramírez*, 80 P.R.R. 501 (1958).

The judgment rendered by the Superior Court, Ponce Part, on October 30, 1959, will be affirmed.